

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INGERSOLL-RAND COMPANY, | Case No. 08 cv 3532 (NRB)(THK) |
| Plaintiff, | |
| v. | COMPLAINT |
| CNA INSURANCE COMPANY, AS SUCCESSOR TO CONTINENTAL CASUALTY COMPANY, |  |
| Defendant. | |

Plaintiff Ingersoll-Rand Company ("Ingersoll Rand"), as and for its Complaint against defendant CNA Insurance Company, as successor to Continental Casualty Company ("CNA"), alleges:

## NATURE OF ACTION AND RELIEF SOUGHT

1. Ingersoll Rand brings this civil action to secure relief from CNA's breach of its insurance coverage obligations. Ingersoll Rand seeks: (a) damages arising from CNA's breach of its excess liability policy sold to Ingersoll Rand; (b) damages arising from CNA's breach of its fiduciary duty of good faith and fair dealing to Ingersoll Rand; and (c) a declaration, pursuant to 28 U.S.C. § 2201, as to CNA's obligations under its excess liability insurance policy sold to Ingersoll Rand, including CNA's obligation to reimburse Ingersoll Rand for defense and indemnity costs arising from certain asbestos-related claims.

## THE PARTIES

2. Ingersoll Rand is incorporated under the laws of New Jersey and maintains its principal place of business at 155 Chestnut Ridge Road, Montvale, New Jersey. Ingersoll Rand transacts business in various states, including New York. At the time Ingersoll Rand purchased

its excess liability insurance policy from CNA, Ingersoll Rand maintained its principal place of business at 11 Broadway, New York, New York.

3.  On information and belief, defendant CNA is incorporated under the laws of the State of Delaware and maintains its principal place of business in Chicago, Illinois. CNA, at all times relevant hereto, has been licensed to transact insurance business, and has transacted insurance business, in the State of New York.

## JURISDICTION AND VENUE

4.  This Court possesses diversity jurisdiction over this matter, pursuant to 28 *U.S.C.* § 1332, because Ingersoll Rand, a New Jersey corporation with its principal place of business in New Jersey, brings this action against CNA, a Delaware corporation with its principal place of business in Illinois. The amount in controversy exceeds the jurisdictional amount.

5.  Venue properly lies in this district, under 28 *U.S.C.* § 1391, because a substantial portion of the events leading to this action occurred in this district and because CNA subjected itself to personal jurisdiction in this district by doing a series of acts in New York for the purpose of realizing pecuniary benefits, including contracting to supply services in New York and contracting to insure persons, property and risks located within New York. CNA, moreover, has consented to service in New York.

## UNDERLYING ASBESTOS CLAIMS AGAINST INGERSOLL RAND

6.  Tens of thousands of claimants have named Ingersoll Rand as a defendant in asbestos-related lawsuits filed in New York State and elsewhere ("Asbestos Claims"). CNA refuses to reimburse Ingersoll Rand for its allocated share of defense and indemnity costs arising from the Asbestos Claims.

7.  New York possesses a substantial interest in CNA's refusal to honor its coverage obligations because Ingersoll Rand litigates approximately 20% of the Asbestos Claims in New York. Ingersoll Rand's New York Asbestos Claims, moreover, give rise to 24% of Ingersoll Rand's total asbestos-related indemnity costs.

8.  Ingersoll Rand has incurred, and will incur in the future, defense costs arising from the Asbestos Claims, including but not limited to counsel fees and other litigation costs. Ingersoll Rand also has incurred, and will incur in the future, indemnity costs arising from the Asbestos Claims.

## THE INSURANCE POLICY

9.  CNA sold to Ingersoll Rand excess liability insurance policy no. RDX9893931 for the periods from June 11, 1964 through January 1, 1966 ("Policy").

10. Ingersoll Rand purchased the Policy through a New York insurance broker formerly known as Marsh & McLennan, Inc.

11. The Policy constitutes part of a $5 million excess layer of insurance coverage, which sits excess of $10 million, excess of primary insurance. The Policy shares this $5 million excess layer with Fireman's Fund Insurance Company and American Home Assurance Company.

12. The Policy provides Ingersoll Rand with liability limits of $2 million, each occurrence and in the aggregate, for product hazard claims during each year, or portion thereof, of the multi-year policy period.

13. Each of the Asbestos Claims alleges or allegedly involves bodily injury resulting from an "occurrence" within the meaning of the Policy.

14. Each of the Asbestos Claims alleges or allegedly involves bodily injury taking place during one or more of the periods set forth in the Policy.

15. The Policy requires CNA to reimburse Ingersoll Rand for its allocable share of defense and indemnity costs arising from the Asbestos Claims.

16. Ingersoll Rand has complied with any conditions precedent to coverage under the Policy.

17. CNA cannot escape coverage for the Asbestos Claims based on any Policy exclusion or condition.

18. New York law, which applies to this coverage dispute, provides that each Asbestos Claim against Ingersoll Rand constitutes a separate occurrence subject to a separate occurrence liability limit under the Policy.

## THE PARTIES' COVERAGE DISPUTE

19. Ingersoll Rand contacted CNA in 2003 -- three (3) years before the Asbestos Claims reached the Policy -- to secure CNA's commitment to provide coverage for Ingersoll Rand's asbestos-related defense and indemnity costs.

20. CNA responded to Ingersoll Rand's repeated coverage requests with nothing more than continuous demands for voluminous information concerning the Asbestos Claims, the Policy and other liability insurance policies sold to Ingersoll Rand. Despite the dubious relevance of most of CNA's demands for information, Ingersoll Rand timely provided all such information. Ingersoll Rand, as early as March 2000, also invited CNA to strategy meetings with Ingersoll Rand and its other liability insurers concerning litigation of the Asbestos Claims, and CNA attended several of those meetings in 2002 and 2003.

21. Because CNA claims it possesses no copy of the Policy, Ingersoll Rand sent to CNA, on or about July 25, 2003, evidence confirming the existence of, and the limits of liability provided by, the Policy. CNA, however, has provided Ingersoll Rand with no documents concerning the Policy.

22. From 2003 through 2006, Ingersoll Rand continued responding to CNA's endless information demands and continued asking CNA to acknowledge its coverage obligations for the Asbestos Claims. Ingersoll Rand's Complex Claims Manager specifically devoted substantial time and energy to this cause. Ingersoll Rand's efforts, however, proved fruitless, as CNA refused to convey its position on coverage for the Asbestos Claims.

23. On or about December 6, 2006, Ingersoll Rand notified CNA that its asbestos-related defense and indemnity costs had reached the Policy. Ingersoll Rand, therefore, requested reimbursement of CNA's allocated share of these costs.

24. CNA refused to honor its coverage obligations and, instead, demanded additional information demonstrating exhaustion of the liability insurance policies underlying the Policy. Ingersoll Rand provided this information to CNA on or about January 2, 2007.

25. CNA thereafter demanded even more exhaustion information, which Ingersoll Rand provided on or about January 25, 2007.

26. Over the following eight (8) months, Ingersoll Rand continued asking CNA to meet to discuss any remaining concerns, and to acknowledge its coverage obligations for the Asbestos Claims.

27. CNA finally agreed to meet with Ingersoll Rand on or about September 20, 2007, to discuss coverage for the Asbestos Claims. Rather than acknowledge finally its coverage obligations, however, CNA demanded additional information concerning (a) Ingersoll Rand's

entire liability insurance program, and (b) costs paid in connection with the Asbestos Claims. CNA also promised to provide its coverage position by November 2007.

28.  On or about October 5, 2007, Ingersoll Rand provided CNA with the additional information demanded at the September 20, 2007 meeting. CNA, however, failed to provide its coverage position by November 2007, and CNA still has not advised Ingersoll Rand of its position regarding coverage for the Asbestos Claims.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

29.  Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 28.

30.  CNA breached its contractual obligations under the Policy by refusing wrongfully to provide Ingersoll Rand with its position on whether the Policy provides coverage for the Asbestos Claims.

31.  Ingersoll Rand has paid more than $1.5 million in asbestos-related defense and indemnity costs for which CNA bears responsibility under the Policy. Ingersoll Rand has demanded reimbursement of these costs under the Policy.

32.  CNA has failed to pay its allocated share of Ingersoll Rand's defense and indemnity costs arising from the Asbestos Claims, thereby breaching its contractual obligations under the Policy.

33.  As a direct and proximate result of CNA's contract breaches, Ingersoll Rand has incurred substantial damages, and such damages continue.

34.  As a direct and proximate result of CNA's contract breaches, Ingersoll Rand also has incurred and will incur reasonably foreseeable consequential damages, including but not

limited to: (a) attorneys' fees and other expenses of prosecuting this action; and (b) lost earnings on amounts paid by Ingersoll Rand for which CNA wrongfully has failed to reimburse. These damages exceed the Policy's liability limits.

### SECOND CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING

35. Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 34.

36. CNA bears a fiduciary duty of good faith and fair dealing to Ingersoll Rand.

37. This fiduciary duty requires CNA, among other things, to conduct itself fairly and with due care and diligence in its dealings with Ingersoll Rand, to act in good faith and in an open and honest manner toward Ingersoll Rand, and to do nothing to injure, frustrate or interfere with Ingersoll Rand's rights to receive the Policy's benefits.

38. Despite more than five (5) years of communications concerning coverage for the Asbestos Claims under the Policy, and despite repeated reimbursement demands since 2006 when the Asbestos Claims reached the Policy, and despite CNA's promise to provide its coverage position by November 2007, CNA refuses to provide Ingersoll Rand with its position on coverage for the Asbestos Claims or to pay any amount toward the Asbestos Claims.

39. Upon receiving notice of the Asbestos Claims, CNA knew, or should have known, of Ingersoll Rand's potential losses arising from the Asbestos Claims and knew, or should have known, that if CNA refused to honor its coverage obligations, Ingersoll Rand would suffer serious damages.

40. CNA possesses information sufficient to confirm it sold the Policy to Ingersoll Rand and the terms and conditions of the Policy.

-7-

41. Upon receiving information concerning the Asbestos Claims, including without limitation Ingersoll Rand's past asbestos-related defense and indemnity costs and information demonstrating exhaustion of the liability policies underlying the Policy, CNA possessed information sufficient to confirm and honor its coverage obligations to Ingersoll Rand under the Policy.

42. Despite this actual or imputed knowledge, CNA wrongfully refuses to provide insurance coverage to Ingersoll Rand for the Asbestos Claims.

43. CNA has breached its fiduciary duty of good faith and fair dealing to Ingersoll Rand by failing to provide its position on coverage for the Asbestos Claims under the Policy.

44. CNA has breached its fiduciary duty of good faith and fair dealing to Ingersoll Rand by refusing wrongfully to acknowledge the existence and terms of the Policy.

45. CNA has breached its fiduciary duty of good faith and fair dealing to Ingersoll Rand by refusing to pay Ingersoll Rand's costs and expenses arising from the Asbestos Claims.

46. CNA's breach of its fiduciary duty of good faith and fair dealing renders it liable to Ingersoll Rand for all damages proximately caused by its breach.

47. CNA's liability to Ingersoll Rand for breaching its fiduciary duty of good faith and fair dealing exceeds the Policy's liability limits.

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT –
### RIGHTS AND OBLIGATIONS UNDER THE POLICY

48. Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 47.

49. Plaintiff seeks a judicial determination of the parties' rights and obligations under the Policy and with respect to the Asbestos Claims.

Case 1:08-cv-03532-NRB    Document 1    Filed 04/11/2008    Page 9 of 10

50. Ingersoll Rand has incurred, and continues to incur, substantial costs and expenses for investigating, defending and/or resolving the Asbestos Claims.

51. An actual and justiciable controversy presently exists between the parties concerning the proper construction of the Policy and the scope of the parties' rights and obligations under the Policy with respect to the Asbestos Claims. The parties need this Court's determination, at this time, so they can ascertain their respective rights and obligations and avoid the uncertainty and attendant multiplicity of legal actions that otherwise would arise from this controversy. This action presents a controversy of sufficient immediacy to justify the issuance of a declaratory judgment.

52. The issuance of relief by this Court will resolve the existing controversy between the parties.

53. In addition to declaratory relief, plaintiff should recover such monetary relief as necessary given the Court's declaration of the parties' rights and obligations.

**WHEREFORE**, plaintiff respectfully demands judgment as follows:

### WITH RESPECT TO THE FIRST CAUSE OF ACTION

1. That this Court enter a judgment awarding compensatory and consequential damages to Ingersoll Rand resulting from CNA's breaches of its contractual obligations under the Policy.

### WITH RESPECT TO THE SECOND CAUSE OF ACTION

2. That this Court enter a judgment awarding compensatory, consequential and punitive damages to Ingersoll Rand resulting from CNA's breaches of its fiduciary duty of good faith and fair dealing to Ingersoll Rand.

-9-

## WITH RESPECT TO THE THIRD CAUSE OF ACTION

3. That this Court, pursuant to 28 U.S.C. § 2201, enter a judgment declaring the rights and obligations of the parties under the Policy for the Asbestos Claims.

## WITH RESPECT TO ALL CAUSES OF ACTION

4. For such orders, including injunctive relief, necessary to preserve the Court's jurisdiction over the parties and the issues herein; for pre-judgment and post-judgment interest according to law; for attorneys' fees, filing fees, and costs of this suit; and for such other and further relief as the Court deems equitable and proper.

Dated: April 10, 2008

MCCARTER & ENGLISH, LLP

By: *Sherilyn Pastor*
Sherilyn Pastor (SP4839)

245 Park Avenue
27th Floor
New York, NY 10167-0001
(212) 609-6800 (ph)
(212) 609-6921 (fax)
Attorneys for Plaintiff