**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | | |
|---|---|---|
| INGERSOLL-RAND COMPANY | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: |
| v. | : | 08 Civ. 3532 (NRB) |
| | : | |
| CNA INSURANCE COMPANY, AS | : | |
| SUCESSOR TO CONTINENTAL | : | **THIRD-PARTY** |
| CASUALTY COMPANY, | : | **COMPLAINT** |
| | : | |
| Defendant. | : | |

-------------------------------------------------------------X
-------------------------------------------------------------X

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY | : | |
| | : | |
| Third-Party Plaintiff, | : | Civil Action No.: |
| v. | : | |
| | : | |
| AIU INSURANCE COMPANY; ALLIANZ | : | |
| UNDERWRITERS INSURANCE COMPANY; | : | |
| ALLSTATE INSURANCE COMPANY, AS | : | |
| SUCCESSOR TO NORTHBROOK INSURANCE | : | |
| COMPANY; AMERICAN CENTENNIAL | : | |
| INSURANCE COMPANY; AMERICAN EMPIRE | : | |
| SURPLUS LINES INSURANCE COMPANY; | : | |
| AMERICAN HOME ASSURANCE COMPANY; | : | |
| AXA BELGIUM SA, AS SUCCESSOR TO | : | |
| ROYAL BELGE; BIRMINGHAM FIRE | : | |
| INSURANCE COMPANY OF PENNSYLVANIA, | : | |
| n/k/a AIG CASUALTY COMPANY;  CENTURY | : | |
| INDEMNITY COMPANY, AS SUCCESSOR | : | |
| TO CALIFORNIA UNION INSURANCE | : | |
| COMPANY; THE CENTRAL NATIONAL | : | |
| INSURANCE COMPANY OF OMAHA; | : | |
| EMPLOYER'S INSURANCE OF WAUSAU; | : | |
| EVEREST REINSURANCE COMPANY, AS | : | |
| SUCCESSOR TO PRUDENTIAL | : | |
| REINSURANCE COMPANY; FEDERAL | : | |
| INSURANCE COMPANY; FIREMAN'S FUND | : | |
| INSURANCE COMPANY; FIRST STATE | : | |
| INSURANCE COMPANY; FREMONT | : | |
| INDEMNITY COMPANY, f/k/a INDUSTRIAL | : | |
| INDEMNITY COMPANY; GENERAL | : | |
| RESINSURANCE CORPORATION; | : | |

GRANITE STATE INSURANCE COMPANY;          :
HARTFORD ACCIDENT & INDEMNITY            :
COMPANY; INSURANCE COMPANY OF            :
NORTH AMERICA; INSURANCE COMPANY         :
OF THE STATE OF PENNSYLVANIA; the        :
Commissioner of Banking and Insurance of the :
State of New Jersey, as Liquidator of        :
INTEGRITY INSURANCE COMPANY;             :
INTERSTATE FIRE & CASUALTY COMPANY, :
AS SUCCESSOR TO INTERNATIONAL            :
INSURANCE COMPANY, INDIVIDUALLY          :
AND AS SUCESSOR TO INTERNATIONAL         :
SURPLUS LINES INSURANCE COMPANY;         :
LEXINGTON INSURANCE COMPANY;             :
LIBERTY MUTUAL INSURANCE COMPANY;   :
MT. MCKINLEY INSURANCE COMPANY,          :
f/k/a GIBRALTAR CASUALTY COMPANY;        :
NATIONAL FIRE & MARINE INSURANCE         :
COMPANY; NATIONAL UNION FIRE             :
COMPANY OF PITTSBURGH, PA; NORTH         :
STAR REINSURANCE CORPORATION;            :
ONEBEACON AMERICA INSURANCE              :
COMPANY, AS SUCCESSOR TO                 :
COMMERCIAL UNION INSURANCE               :
COMPANY; THE REPUBLIC INSURANCE          :
COMPANY; Albert A. Riederer, Deputy Liquidator:
of TRANSIT CASUALTY COMPANY; TWIN        :
CITY FIRE INSURANCE COMPANY;             :
UNDERWRITERS AT LLOYD'S, LONDON;         :
The Insurance Commissioner of the State of   :
California, as Liquidator of WESTERN          :
EMPLOYERS INSURANCE COMPANY.             :
                                         :
                Third-Party Defendants.   :
-------------------------------------------------------------X

Third-Party Plaintiff, Continental Casualty Company ("CCC"), by and through its

attorneys Ford, Marrin, Esposito Witmeyer & Gleser, LLP, alleges as follows:

## GENERAL ALLEGATIONS

## NATURE OF ACTION

1.      This is a civil action for declaratory judgment commenced by Plaintiff Ingersoll-Rand ("I-R") pursuant to 28 U.S.C. Section 2201, and arises from the alleged issuance of an insurance policy by CCC to I-R. A copy of the Summons and Complaint are annexed hereto as Exhibit A. A copy of CCC's Answer is attached hereto as Exhibit B.

2.      Through this Third-Party Complaint, CCC seeks a declaration of the rights and obligations of all of I-R's insurance carriers concerning the obligation to pay and the allocation of payment of costs and expenses of defending and indemnifying I-R with respect to its underlying asbestos liabilities.

## THE PARTIES

3.      Ingersoll Rand is incorporated under the laws of the state of New Jersey and maintains its principal place of business at 155 Chestnut Ridge Road, Montvale, New Jersey.

4.      Third-Party Plaintiff Continental Casualty Company is incorporated under the laws of Illinois, having its principal place of business in Chicago, IL, and has been licensed, authorized, or transacting business in various states, including New York and New Jersey, to issue insurance policies, including liability insurance policies.

5.      Allianz Underwriters Insurance Company is a corporation incorporated under the laws of California, having its principal place of business in Burbank, CA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

6.      Allstate Insurance Company, as successor to Northbrook Insurance Company, is a corporation incorporated under the laws of Illinois, having its principal

place of business in Northbrook, IL, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

7.      American Centennial Insurance Company is a corporation incorporated under the laws of Delaware, having its principal place of business in Wilmington, DE, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

8.      American Empire Surplus Lines Insurance Company is a corporation incorporated under the laws of Delaware, having its principal place of business in Cincinnati, Ohio, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

9.      American Home Assurance Company is a corporation incorporated under the laws of New York, having its principal place of business in New York, NY, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

10.     AIU Insurance Company is a corporation incorporated under the laws of New York, having its principal place of business in New York, NY, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

11.     AXA Belgium SA, as successor in interest to Royal Belge, is organized under the laws of Belgium, and having its principal place of business in Brussels, Belgium, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

12.    Birmingham Fire Insurance Company, Inc., n/k/a AIG Casualty Company, is a corporation incorporated under the laws of Pennsylvania, having its principal place of business in New York, NY and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

13.    Century Indemnity Company, as successor in interest to California Union Insurance Company, is a corporation incorporated under the laws of Pennsylvania, having its principal place of business in Philadelphia, PA and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

14.    The Central National Insurance Company of Omaha is a corporation incorporated under the laws of Nebraska, having its principal place of business in Omaha, NE, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

15.    Employer's Insurance of Wausau is a corporation incorporated under the laws of Wisconsin, having its principal place of business in Wausau, WI, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

16.    Everest Reinsurance Company, as successor to Prudential Reinsurance Company, is a corporation incorporated under the laws of Delaware, having its principal place of business in Liberty Corner, New Jersey, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

17.     Federal Insurance Company is a corporation incorporated under the laws of New Jersey, having its principal place of business in Warren, NJ, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

18.     Fireman's Fund Insurance Company is a corporation incorporated under the laws of California, having its principal place of business in Novato, CA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

19.     First State Insurance Company is a corporation incorporated under the laws of Connecticut, having its principal place of business in Boston, MA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

20.     Freemont Indemnity Company, f/k/a Industrial Indemnity Company, is a corporation incorporated under the laws of California, having its principal place of business in Glendale, CA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

21.     General Reinsurance Corporation is a corporation incorporated under the laws of Delaware, having its principal place of business in Stamford, CT, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

22.     Granite State Insurance Company is a corporation incorporated under the laws of Pennsylvania, having its principal place of business in Philadelphia, PA and has

been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

23.    Hartford Accident & Indemnity Company is a corporation incorporated under the laws of Connecticut, having its principal place of business in Hartford, CT, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

24.    Insurance Company of North America is a corporation incorporated under the laws of Pennsylvania, having its principal place of business in Philadelphia, PA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

25.    Insurance Company of the State of Pennsylvania is a corporation incorporated under the laws of Pennsylvania, having its principal place of business in Philadelphia, PA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

26.    Integrity Insurance Company was a corporation incorporated under the laws of New Jersey, having its principal place of business in New Jersey, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.  Upon information and belief, Integrity was placed into liquidation on or about 3/24/1987.

27.    Interstate Fire & Casualty Company, as successor to International Indemnity Company, individually and as successor to International Surplus Lines Insurance Company, is a corporation incorporated under the laws of Illinois with its principal place of business in Chicago, IL, and has been licensed, authorized or

transacting business in various states, including New York, to issue liability insurance policies.

28.    Lexington Insurance Company is a corporation incorporated under the laws of Delaware, having its principal place of business in Boston, MA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

29.    Liberty Mutual Insurance Company is a corporation incorporated under the laws of Massachusetts, having its principal place of business in Boston, MA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

30.    Mt. McKinley Insurance Company f/k/a Gibraltar Casualty Company is a corporation incorporated under the laws of Delaware, having its principal place of business in Wilmington, DE and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

31.    National Fire & Marine Insurance Company is a corporation incorporated under the laws of Nebraska, having its principal place of business in Omaha, NE, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

32.    National Union Fire Company of Pittsburgh, PA is a corporation incorporated under the laws of Pennsylvania, having its principal place of business in Pittsburgh, PA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

33.    North Star Reinsurance Corporation is a corporation incorporated under the laws of Delaware, having its principal place of business in Stamford, CT, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

34.    OneBeacon America Insurance Company, as successor to Commercial Union Insurance Company, is a corporation incorporated under the laws of Massachusetts, having its principal place of business in Canton, Mass, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

35.    The Republic Insurance Company is a corporation incorporated under the laws of Delaware, having its principal place of business in Dallas, TX, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

36.    Transit Casualty Company was a corporation incorporated under the laws of Missouri, having its principal place of business in St Louis, MO, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.  Upon information and belief, Transit Casualty Company was placed into liquidation on or about 12/3/1985.

37.    Twin City Fire Insurance Company is a corporation incorporated under the laws of Indiana, having its principal place of business in Indianapolis, IN, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

38.     Underwriters at Lloyd's, London is organized under the laws of England, and has a place of business in New York, NY and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.

39.     Western Employers Insurance Company was a corporation incorporated under the laws of California, having its principal place of business in Fullerton, CA, and has been licensed, authorized or transacting business in various states, including New York, to issue liability insurance policies.  Upon information and belief, Western Employers Insurance Company was placed into liquidation on or about 4/19/1991.

### JURISDICTION AND VENUE

40.     This Court possesses diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, because Ingersoll Rand, a corporation with its principal place of business in New Jersey, brought this action against CCC, an Illinois corporation with its principal place of business in Illinois.  The amount in controversy exceeds the jurisdictional amount.

41.     This Third-Party Complaint arises out of the same facts and circumstances asserted in the Complaint so that the Court may exercise supplemental jurisdiction over it under the provisions of 28 U.S.C. § 1367 (a).

### THE INSURANCE POLICIES

42.     Upon information and belief, AIU Insurance Company., issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| 75100045 | 1/1/78-1/1/79 |

75102479                1/1/81-1/1/82

75102570                1/1/82-1/1/83

43.    Upon information and belief, Allianz Underwriters Insurance Company issued liability policy number C7300029 to I-R, effective 1/1/82 through 1/1/83.

44.    Upon information and belief, Allstate Insurance Company, as successor to Northbrook Insurance Company, issued liability policies to I-R. These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| 63300022 | 1/1/75-1/1/77 |
| 63002598 | 1/1/77-1/1/78 |
| 63002636 | 1/1/77-1/1/78 |
| 63002852 | 4/1/77- 1/1/78 |
| 63003805 | 1/1/78-1/1/80 |
| 63005219 | 1/1/79-1/1/80 |
| 63006206 | 1/1/80-1/1/81 |
| 63006207 | 1/1/80-1/1/81 |
| 63006206 | 1/1/81-1/1/82 |
| 63007294 | 1/1/81-1/1/82 |
| 63008325 | 1/1/82-1/1/83 |
| 63008326 | 1/1/82-1/1/83 |

45.    Upon information and belief, American Centennial Insurance Company issued liability policies to I-R. These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| 462025165 | 1/1/82-1/1/83 |
| CC002644 | 1/1/82-1/1/83 |

46.     Upon information and belief, American Empire Surplus Lines Insurance Company issued liability policy number 6CX02498 to I-R, effective 1/1/86 through 1/1/87.

47.     Upon information and belief, American Home Assurance Company issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| 351025 | 6/11/64- 1/1/66 |
| CE355860 | 7/10/69-2/15/72 |
| 9609055 | 1/1/84-1/1/85 |

48.     Upon information and belief, AXA Belgium SA, as successor to Royal Belge, issued liability policy number AVB 114 to I-R, effective 1/1/84 through 1/1/85.

49.     Upon information and belief, Birmingham Fire Insurance Company of Pennsylvania, n/k/a/ AIG Casualty Company, issued liability policy number SE6074208 to I-R, effective 1/1/84 through 1/1/85.

50.     Upon information and belief, Century Indemnity Company, as successor to California Union Insurance Company, issued liability policy number ZCX007668 to I-R, effective 1/1/84 through 1/1/85

51.     Upon information and belief, the Central National Insurance Company of Omaha issued liability policy XUL231700 to I-R, effective 1/1/83 through 1/1/85.

52.    Upon information and belief, Employer's Insurance of Wausau issued liability policies to I-R. These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
|---|---|
| 573400200432 | 1/1/83-1/1/84 |
| 573500200432 | 1/1/84-1/1/85 |
| 573600102563 | 1/1/84/-1/1/85 |
| 573600102563 | 1/1/85-1/1/86 |

53.    Upon information and belief, Everest Reinsurance Company, as successor to Prudential Reinsurance Company, issued liability policies to I-R. These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
|---|---|
| DXCDX0548 | 1/1/78-1/1/79 |
| DXCDX1374 | 1/1/79-1/1/80 |
| GMX00803 | 1/1/81-1/1/82 |

54.    Upon information and belief, Federal Insurance Company issued liability policies to I-R. These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
|---|---|
| (84)79288607 | 1/1/84-1/1/85 |
| (85)79288607 | 1/1/84-1/1/85 |
| (86)79288607 | 1/1/84-1/1/85 |
| (5)857928-66 | 1/1/84-1/1/85 |

55.    Upon information and belief, Fireman's Fund Insurance Company issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| XL76216 | 6/11/64-1/1/66 |
| XLX1041692 | 7/10/69-2/15/72 |

56.    Upon information and belief, First State Insurance Company issued liability policy number 936040 to I-R, effective 1/1/83 through 1/1/84.

57.    Upon information and belief, Fremont Indemnity Company, f/k/a Industrial Indemnity Company, issued liability policy number JE884-8839 to I-R, effective 1/1/84-1/1/85.

58.    Upon information and belief, General Reinsurance Corporation issued liability policy number X2420 to I-R, effective 8/5/54 through 1/1/61.

59.    Upon information and belief, Granite State Insurance Company issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| 61780024 | 1/1/78-1/1/79 |
| 61790925 | 1/1/79-1/1/80 |
| 64815137 | 1/1/81-1/1/82 |
| 64825319 | 1/1/82-1/1/83 |
| 64857103 | 1/1/85-1/1/86 |

60.    Upon information and belief, Hartford Accident & Indemnity Company issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| 10CB41200E | 2/1/73-1/1/74 |
| 10CB41213E | 1/1/74-1/1/75 |
| 10CB41224E | 1/1/75-1/1/76 |

61.    Upon information and belief, the Insurance Company of North America issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| LAB16378 | 2/1/66-1/1/67 |
| LAB21602 | 1/1/67-1/1/69 |
| XBC1904 | 1/1/66-1/1/69 |
| XBC42188 | 1/1/69-7/10/69 |
| LAB21649 | 1/1/69-1/1/72 |
| XBC42188 | 7/10/69-2/15/72 |
| LAB47234 | 1/1/72-2/1/73 |

62.    Upon information and belief, the Insurance Company of the State of Pennsylvania issued liability policy number 41777736 to I-R, effective 4/1/77 through 1/1/78.

63.    Upon information and belief, Integrity Insurance Company issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
|---|---|
| XL200202 | 1/1/78-1/179 |
| XL203720 | 1/1/82-1/1/83 |

64.    Upon information and belief, Interstate Fire & Casualty Company, as successor to International Insurance Company, individually and as successor to International Surplus Lines Insurance Company, issued liability policies to I-R. International Insurance Company issued liability policy number 5220471159 to I-R, effective 1/1/84 through 1/1/85.  International Surplus Lines Insurance Company issued liability policy number 5220551007 to I-R, effective 1/1/84-1/1/85.

65.    Upon information and belief, Lexington Insurance Company issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
|---|---|
| 8GC403206 | 2/15/72-1/1/75 |
| GC5504536 | 1/1/75-1/1/77 |
| GC5501911 | 1/1/77-1/1/78 |

66.    Upon information and belief, Liberty Mutual Insurance Company issued liability policies to I-R.  These policies are listed below by policy number and policy term.

| Policy Number | Policy Term |
|---|---|
| 1632004009106 | 1/1/76-1/1/77 |
| 1632004009107 | 1/1/77-1/1/78 |

67.    Upon information and belief, Mt. McKinley Insurance Company, f/k/a Gibraltar Casualty Company, issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| GMX00379 | 1/1/80-1/1/81 |
| GMX00803 | 1/1/81-1/1/82 |
| GMX01439 | 1/1/82-1/1/83 |

68.    Upon information and belief, National Fire & Marine Insurance Company issued policy number 2EL21868 to I-R, effective 1/1/86 through 1/1/87.

69.    Upon information and belief, National Union Fire Company of Pittsburgh, PA, issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| 96030(39)(19) | 1/1/82-1/1/83 |
| BE3074330 | 1/1/90-1/1/91 |
| CLM3082733 | 1/1/91-1/1/92 |
| CLM3083809 | 1/1/92-1/1/93 |
| CLM3087620 | 1/1/93-1/1/94 |
| CLM3091357 | 1/1/94-1/1/95 |

70.    Upon information and belief, North Star Reinsurance Corporation issued liability policy number NSX1078 to I-R, effective 2/15/72 through 1/1/75.

71.    Upon information and belief, OneBeacon America Insurance Company, as successor to Commercial Union Insurance Company, issued liability policies to I-R. These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
|---|---|
| CL3347300 | 3/28-61-1/1/63 |
| CLE169011013 | 1/1/63-1/1/64 |
| E169011013 | 4/26/63-1/1/66 |
| CLE169011027 | 1/1/64-1/1/65 |
| CLE169011040 | 1/1/65-2/1/66 |

72.    Upon information and belief, Republic Insurance Company issued liability policy number CDE1443 to I-R, effective 1/1/85 through 1/1/86.

73.    Upon information and belief, Transit Casualty Company issued liability policies to I-R. These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
|---|---|
| SCU955437 | 1/1/85-1/1/82 |
| SCU956109 | 1/1/82-1/1/83 |
| SCU957126 | 1/1/84-1/1/86 |
| SCU957127 | 1/1/84-1/1/85 |

74.    Upon information and belief, Twin City Fire Insurance Company issued liability policies to I-R. These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
|---|---|
| TXS102617 | 1/1/83-1/1/84 |

TXS5103539                 1/1/84-1/1/85

75.    Upon information and belief, Underwriters at Lloyd's, London issued liability policies to I-R.  These policies are listed below by policy number and policy term:

| Policy Number | Policy Term |
| --- | --- |
| K28412 | 1/1/54-1/1/58 |
| K28413 | 1/1/54-1/1/58 |
| K28414 | 1/1/54-1/1/58 |
| K28415 | 1/1/54-1/1/58 |
| CK2311 | 1/1/58-1/1/61 |
| CK2312 | 1/1/58-1/1/61 |
| CK2313 | 1/1/58-1/1/61 |
| 87D17460 | 10/25/61-1/1/64 |
| 20770510000 | 2/15/72-1/1/75 |
| 20770520000 | 2/15/72-1/1/75 |
| 50770510006 | 1/1/75-1/1/77 |
| 772100106 | 4/1/77-1/1/78 |
| 8727341 | 1/1/78-1/1/79 |
| 97346110000 | 1/1/79-1/1/80 |
| 80DD260 | 1/1/80-1/1/81 |
| PY000281 | 1/1/81-1/1/82 |
| KY001182 | 1/1/82-1/1/83 |

76.    Upon information and belief, Western Employers Insurance Company issued a liability policy to I-R, effective 1/1/84 through 1/1/85.

## AS AND FOR A FIRST CAUSE OF ACTION
### (DEFENSE AND INDEMNITY OBLIGATIONS)

77    Third-Party Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 42.

78.    This is a cause of action for declaratory relief pursuant to 28 U.S.C. Section 2201. Third-Party Plaintiff seeks a judicial determination of the rights and duties of Third-Party Plaintiff, Third-Party Defendant insurers, and I-R with respect to an actual controversy arising out of policies issued or allegedly issued by CCC and Third-Party Defendants to I-R.

79.    I-R contends that CCC is obligated under the terms of the alleged CCC policy to provide coverage in connection with underlying asbestos claims such that CCC is obligated to indemnify I-R for I-R's alleged damages and for costs paid by or on behalf of I-R in defense of the asbestos claims to date, and to defend I-R with respect to the asbestos claims.

80.    Third-Party Plaintiff, Third-Party Defendants and I-R dispute the existence, scope and extent of any defense or indemnity obligation to I-R for the asbestos claims.

81.    Under the circumstances, a determination by this Court is necessary and proper at this time so that the parties may ascertain their respective rights and obligations and avoid the multiplicity of legal actions that would otherwise occur. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

82.    The issuance of relief by this Court will resolve some or all of the existing controversy between the parties.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(APPORTIONMENT AND ALLOCATION)**

83.    Third-Party Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 48 .

84.    To the extent that Third-Party Plaintiff may be found liable to I-R for defense and indemnity in connection with the asbestos claims, Third-Party Plaintiff contends it is entitled to an apportionment of liability pursuant to applicable law and the alleged policy.  Third-Party Plaintiff, Third-Party Defendants and I-R will dispute whether any defense or indemnity obligations are owed to I-R and will dispute apportionment of liability under the alleged policies and applicable law arising out of the asbestos claims.  Third-Party plaintiff is further informed and believes that I-R will dispute any amount that may be apportioned to it.

85.    To the extent that Third-Party Plaintiff may be found liable to I-R for defense and indemnity in connection with the Asbestos Claims, an actual justiciable controversy presently exists between Third-Party Plaintiff, Third-Party Defendants, and I-R concerning the proper construction of the alleged CCC Policy and the policies issued by Third-Party Defendants and the existence, scope and extent of the rights and obligations of the parties thereto with respect to the asbestos claims.  Under the circumstances, a determination by this Court is necessary and proper at this time so that the parties may ascertain their respective rights and obligations and avoid the multiplicity of legal actions that would otherwise occur.  The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

86.    The issuance of relief by this Court will resolve some or all of the existing controversy between the parties.

**WHEREFORE**, Third-Party Plaintiff prays for relief pursuant to 28 U.S.C. Section 2201 as follows:

1.    On the First Cause of Action, Third-Party Plaintiff requests the Court enter a judgment declaring the existence, scope and extent of the rights and obligations under the alleged policy issued by CCC and the policies issued by Third-Party Defendants for the asbestos claims;

2.    On the Second Cause of Action, that in the event Third-Party Plaintiff is found liable to IR for defense and indemnity in connection with the asbestos claims, plaintiff requests the Court enter a judgment declaring the apportionment of liability for defense and indemnity of the asbestos claims with Third-Party Defendants; and

3.    That Third-Party Plaintiff is entitled to the costs of suit incurred herein and for such other relief as the Court may deem proper.

Dated: June 9, 2008

Respectfully Submitted,

**FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P.**

By: _Alfred L. D'I_____

Edward M. Pinter (EP 5869)
Alfred L. D'Isernia (AD 9700)

Wall Street Plaza
New York, New York 10005-1875
Tel.: (212) 269-4900

*Attorneys for Defendant/Third-Party Plaintiff*
*Continental Casualty  Company*

EXHIBIT A

JUDGE BUCHWALD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INGERSOLL-RAND COMPANY,           :

                      Plaintiff,  :

          v.                      :

CNA INSURANCE COMPANY, AS         :
SUCCESSOR TO CONTINENTAL
CASUALTY COMPANY,                 :

                      Defendant.  :

Case No.

COMPLAINT

Plaintiff Ingersoll-Rand Company ("Ingersoll Rand"), as and for its Complaint against

defendant CNA Insurance Company, as successor to Continental Casualty Company ("CNA"),

alleges:

## NATURE OF ACTION AND RELIEF SOUGHT

1.      Ingersoll Rand brings this civil action to secure relief from CNA's breach of its

insurance coverage obligations.  Ingersoll Rand seeks: (a) damages arising from CNA's breach

of its excess liability policy sold to Ingersoll Rand; (b) damages arising from CNA's breach of its

fiduciary duty of good faith and fair dealing to Ingersoll Rand; and (c) a declaration, pursuant to

28 *U.S.C.* § 2201, as to CNA's obligations under its excess liability insurance policy sold to

Ingersoll Rand, including CNA's obligation to reimburse Ingersoll Rand for defense and

indemnity costs arising from certain asbestos-related claims.

## THE PARTIES

2.      Ingersoll Rand is incorporated under the laws of New Jersey and maintains its

principal place of business at 155 Chestnut Ridge Road, Montvale, New Jersey.  Ingersoll Rand

transacts business in various states, including New York.  At the time Ingersoll Rand purchased

its excess liability insurance policy from CNA. Ingersoll Rand maintained its principal place of business at 11 Broadway, New York, New York.

3.    On information and belief, defendant CNA is incorporated under the laws of the State of Delaware and maintains its principal place of business in Chicago, Illinois. CNA, at all times relevant hereto, has been licensed to transact insurance business, and has transacted insurance business, in the State of New York.

## JURISDICTION AND VENUE

4.    This Court possesses diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, because Ingersoll Rand, a New Jersey corporation with its principal place of business in New Jersey, brings this action against CNA, a Delaware corporation with its principal place of business in Illinois. The amount in controversy exceeds the jurisdictional amount.

5.    Venue properly lies in this district, under 28 U.S.C. § 1391, because a substantial portion of the events leading to this action occurred in this district and because CNA subjected itself to personal jurisdiction in this district by doing a series of acts in New York for the purpose of realizing pecuniary benefits, including contracting to supply services in New York and contracting to insure persons, property and risks located within New York. CNA, moreover, has consented to service in New York.

## UNDERLYING ASBESTOS CLAIMS AGAINST INGERSOLL RAND

6.    Tens of thousands of claimants have named Ingersoll Rand as a defendant in asbestos-related lawsuits filed in New York State and elsewhere ("Asbestos Claims"). CNA refuses to reimburse Ingersoll Rand for its allocated share of defense and indemnity costs arising from the Asbestos Claims.

7.   New York possesses a substantial interest in CNA's refusal to honor its coverage obligations because Ingersoll Rand litigates approximately 20% of the Asbestos Claims in New York. Ingersoll Rand's New York Asbestos Claims, moreover, give rise to 24% of Ingersoll Rand's total asbestos-related indemnity costs.

8.   Ingersoll Rand has incurred, and will incur in the future, defense costs arising from the Asbestos Claims, including but not limited to counsel fees and other litigation costs. Ingersoll Rand also has incurred, and will incur in the future, indemnity costs arising from the Asbestos Claims.

### THE INSURANCE POLICY

9.   CNA sold to Ingersoll Rand excess liability insurance policy no. RDX9893931 for the periods from June 11, 1964 through January 1, 1966 ("Policy").

10.   Ingersoll Rand purchased the Policy through a New York insurance broker formerly known as Marsh & McLennan, Inc.

11.   The Policy constitutes part of a $5 million excess layer of insurance coverage, which sits excess of $10 million, excess of primary insurance. The Policy shares this $5 million excess layer with Fireman's Fund Insurance Company and American Home Assurance Company.

12.   The Policy provides Ingersoll Rand with liability limits of $2 million, each occurrence and in the aggregate, for product hazard claims during each year, or portion thereof, of the multi-year policy period.

13.   Each of the Asbestos Claims alleges or allegedly involves bodily injury resulting from an "occurrence" within the meaning of the Policy.

14.    Each of the Asbestos Claims alleges or allegedly involves bodily injury taking place during one or more of the periods set forth in the Policy.

15.    The Policy requires CNA to reimburse Ingersoll Rand for its allocable share of defense and indemnity costs arising from the Asbestos Claims.

16.    Ingersoll Rand has complied with any conditions precedent to coverage under the Policy.

17.    CNA cannot escape coverage for the Asbestos Claims based on any Policy exclusion or condition.

18.    New York law, which applies to this coverage dispute, provides that each Asbestos Claim against Ingersoll Rand constitutes a separate occurrence subject to a separate occurrence liability limit under the Policy.

## THE PARTIES' COVERAGE DISPUTE

19.    Ingersoll Rand contacted CNA in 2003 -- three (3) years before the Asbestos Claims reached the Policy -- to secure CNA's commitment to provide coverage for Ingersoll Rand's asbestos-related defense and indemnity costs.

20.    CNA responded to Ingersoll Rand's repeated coverage requests with nothing more than continuous demands for voluminous information concerning the Asbestos Claims, the Policy and other liability insurance policies sold to Ingersoll Rand.  Despite the dubious relevance of most of CNA's demands for information, Ingersoll Rand timely provided all such information. Ingersoll Rand, as early as March 2000, also invited CNA to strategy meetings with Ingersoll Rand and its other liability insurers concerning litigation of the Asbestos Claims, and CNA attended several of those meetings in 2002 and 2003.

-4-

21.    Because CNA claims it possesses no copy of the Policy, Ingersoll Rand sent to CNA, on or about July 25, 2003, evidence confirming the existence of, and the limits of liability provided by, the Policy.  CNA, however, has provided Ingersoll Rand with no documents concerning the Policy.

22.    From 2003 through 2006, Ingersoll Rand continued responding to CNA's endless information demands and continued asking CNA to acknowledge its coverage obligations for the Asbestos Claims.  Ingersoll Rand's Complex Claims Manager specifically devoted substantial time and energy to this cause.  Ingersoll Rand's efforts, however, proved fruitless, as CNA refused to convey its position on coverage for the Asbestos Claims.

23.    On or about December 6, 2006, Ingersoll Rand notified CNA that its asbestos-related defense and indemnity costs had reached the Policy.  Ingersoll Rand, therefore, requested reimbursement of CNA's allocated share of these costs.

24.    CNA refused to honor its coverage obligations and, instead, demanded additional information demonstrating exhaustion of the liability insurance policies underlying the Policy. Ingersoll Rand provided this information to CNA on or about January 2, 2007.

25.    CNA thereafter demanded even more exhaustion information, which Ingersoll Rand provided on or about January 25, 2007.

26.    Over the following eight (8) months, Ingersoll Rand continued asking CNA to meet to discuss any remaining concerns, and to acknowledge its coverage obligations for the Asbestos Claims.

27.    CNA finally agreed to meet with Ingersoll Rand on or about September 20, 2007, to discuss coverage for the Asbestos Claims.  Rather than acknowledge finally its coverage obligations, however, CNA demanded additional information concerning (a) Ingersoll Rand's

-5-

entire liability insurance program, and (b) costs paid in connection with the Asbestos Claims. CNA also promised to provide its coverage position by November 2007.

28.    On or about October 5, 2007, Ingersoll Rand provided CNA with the additional information demanded at the September 20, 2007 meeting. CNA, however, failed to provide its coverage position by November 2007, and CNA still has not advised Ingersoll Rand of its position regarding coverage for the Asbestos Claims.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

29.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 28.

30.    CNA breached its contractual obligations under the Policy by refusing wrongfully to provide Ingersoll Rand with its position on whether the Policy provides coverage for the Asbestos Claims.

31.    Ingersoll Rand has paid more than $1.5 million in asbestos-related defense and indemnity costs for which CNA bears responsibility under the Policy. Ingersoll Rand has demanded reimbursement of these costs under the Policy.

32.    CNA has failed to pay its allocated share of Ingersoll Rand's defense and indemnity costs arising from the Asbestos Claims, thereby breaching its contractual obligations under the Policy.

33.    As a direct and proximate result of CNA's contract breaches, Ingersoll Rand has incurred substantial damages, and such damages continue.

34.    As a direct and proximate result of CNA's contract breaches, Ingersoll Rand also has incurred and will incur reasonably foreseeable consequential damages, including but not

limited to: (a) attorneys' fees and other expenses of prosecuting this action; and (b) lost earnings on amounts paid by Ingersoll Rand for which CNA wrongfully has failed to reimburse. These damages exceed the Policy's liability limits.

**SECOND CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**

35.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 34.

36.    CNA bears a fiduciary duty of good faith and fair dealing to Ingersoll Rand.

37.    This fiduciary duty requires CNA, among other things, to conduct itself fairly and with due care and diligence in its dealings with Ingersoll Rand, to act in good faith and in an open and honest manner toward Ingersoll Rand, and to do nothing to injure, frustrate or interfere with Ingersoll Rand's rights to receive the Policy's benefits.

38.    Despite more than five (5) years of communications concerning coverage for the Asbestos Claims under the Policy, and despite repeated reimbursement demands since 2006 when the Asbestos Claims reached the Policy, and despite CNA's promise to provide its coverage position by November 2007, CNA refuses to provide Ingersoll Rand with its position on coverage for the Asbestos Claims or to pay any amount toward the Asbestos Claims.

39.    Upon receiving notice of the Asbestos Claims, CNA knew, or should have known, of Ingersoll Rand's potential losses arising from the Asbestos Claims and knew, or should have known, that if CNA refused to honor its coverage obligations, Ingersoll Rand would suffer serious damages.

40.    CNA possesses information sufficient to confirm it sold the Policy to Ingersoll Rand and the terms and conditions of the Policy.

-7-

41.    Upon receiving information concerning the Asbestos Claims, including without limitation Ingersoll Rand's past asbestos-related defense and indemnity costs and information demonstrating exhaustion of the liability policies underlying the Policy, CNA possessed information sufficient to confirm and honor its coverage obligations to Ingersoll Rand under the Policy.

42.    Despite this actual or imputed knowledge, CNA wrongfully refuses to provide insurance coverage to Ingersoll Rand for the Asbestos Claims.

43.    CNA has breached its fiduciary duty of good faith and fair dealing to Ingersoll Rand by failing to provide its position on coverage for the Asbestos Claims under the Policy.

44.    CNA has breached its fiduciary duty of good faith and fair dealing to Ingersoll Rand by refusing wrongfully to acknowledge the existence and terms of the Policy.

45.    CNA has breached its fiduciary duty of good faith and fair dealing to Ingersoll Rand by refusing to pay Ingersoll Rand's costs and expenses arising from the Asbestos Claims.

46.    CNA's breach of its fiduciary duty of good faith and fair dealing renders it liable to Ingersoll Rand for all damages proximately caused by its breach.

47.    CNA's liability to Ingersoll Rand for breaching its fiduciary duty of good faith and fair dealing exceeds the Policy's liability limits.

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT –
### RIGHTS AND OBLIGATIONS UNDER THE POLICY

48.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 47.

49.    Plaintiff seeks a judicial determination of the parties' rights and obligations under the Policy and with respect to the Asbestos Claims.

-8-

50.    Ingersoll Rand has incurred, and continues to incur, substantial costs and expenses for investigating, defending and/or resolving the Asbestos Claims.

51.    An actual and justiciable controversy presently exists between the parties concerning the proper construction of the Policy and the scope of the parties' rights and obligations under the Policy with respect to the Asbestos Claims. The parties need this Court's determination, at this time, so they can ascertain their respective rights and obligations and avoid the uncertainty and attendant multiplicity of legal actions that otherwise would arise from this controversy. This action presents a controversy of sufficient immediacy to justify the issuance of a declaratory judgment.

52.    The issuance of relief by this Court will resolve the existing controversy between the parties.

53.    In addition to declaratory relief, plaintiff should recover such monetary relief as necessary given the Court's declaration of the parties' rights and obligations.

**WHEREFORE**, plaintiff respectfully demands judgment as follows:

### WITH RESPECT TO THE FIRST CAUSE OF ACTION

1.    That this Court enter a judgment awarding compensatory and consequential damages to Ingersoll Rand resulting from CNA's breaches of its contractual obligations under the Policy.

### WITH RESPECT TO THE SECOND CAUSE OF ACTION

2.    That this Court enter a judgment awarding compensatory, consequential and punitive damages to Ingersoll Rand resulting from CNA's breaches of its fiduciary duty of good faith and fair dealing to Ingersoll Rand.

-9-

## WITH RESPECT TO THE THIRD CAUSE OF ACTION

3.    That this Court, pursuant to 28 *U.S.C.* § 2201, enter a judgment declaring the rights and obligations of the parties under the Policy for the Asbestos Claims.

## WITH RESPECT TO ALL CAUSES OF ACTION

4.    For such orders, including injunctive relief, necessary to preserve the Court's jurisdiction over the parties and the issues herein; for pre-judgment and post-judgment interest according to law; for attorneys' fees, filing fees, and costs of this suit; and for such other and further relief as the Court deems equitable and proper.

Dated:  April 10, 2008

MCCARTER & ENGLISH, LLP

By: *Sherilyn Pastor*
Sherilyn Pastor (SP4839)

245 Park Avenue
27th Floor
New York, NY 10167-0001
(212) 609-6800 (ph)
(212) 609-6921 (fax)
Attorneys for Plaintiff

EXHIBIT B



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                                              :
INGERSOLL-RAND COMPANY            :
                                              :      Civil Action No.:
                  Plaintiff,                :      08-Civ-3532 (NRB)
         v.                                   :      ECF CASE
                                              :
CNA INSURANCE COMPANY, AS        :      **ANSWER**
SUCESSOR TO CONTINENTAL           :
CASUALTY COMPANY,                    :      <u>Jury Trial Demanded</u>
                                              :
                  Defendant.              :
                                              :
-----------------------------------------------------X

Defendant, Continental Casualty Company ("CCC") sued herein as CNA Insurance Company, as successor to Continental Casualty Company[1], as and for its Answer to the Complaint, plaintiff, Ingersoll-Rand Company ("I-R"), alleges as follows:

1.      The allegations in paragraph 1 of the Complaint constitute conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies the allegations set forth within paragraph 1 of the Complaint.

2.      CCC, upon information and belief, admits that I-R is incorporated under the laws of the State of New Jersey and maintains its principal place of business at 155 Chestnut Ridge Road, Montvale, New Jersey, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 2 of the Complaint.

---

[1] "CNA Insurance Company" is not a legal entity capable of suing or being sued. "CNA Insurance Company" is a fleet name for a related group of companies. Continental Casualty Company, which has been named herein as the predecessor to CNA Insurance Company, is part of the "CNA Insurance Company" family.

165246.1

3.    In response to paragraph 3 of the Complaint, CCC avers that "CNA Insurance Company" is not a legal entity capable of suing or being sued and otherwise denies the allegations contained therein.  Notwithstanding the forgoing denial CCC is incorporated under the laws of the State of Illinois and maintains a principal place of business within the State of Illinois.

4.    The allegations in paragraph 4 of the Complaint constitute conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC admits only that CCC is an Illinois corporation, having its principal place of business within the State of Illinois, and that upon information and belief, I-R is a New Jersey Corporation having its principal place of business in the State of New Jersey.

5.    The allegations contained within paragraph 5 of the Complaint constitute conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies the allegations contained within paragraph 5 of the Complaint.

6.    CCC, upon information and belief, admits only that I-R has been named as a defendant in asbestos-related lawsuits, and otherwise denies that it has any obligation to provide I-R with a defense or indemnity in connection with the asbestos-related lawsuits filed against I-R.

7.    The allegations contained within paragraph 7 of the Complaint constitute conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies the allegations contained within paragraph 7 of the Complaint.

8.    Denies knowledge or information sufficient to form a response as to the allegations set forth within paragraph 8 of the Complaint.

9.    Denies the allegations contained within paragraph numbers 9 through 12 of the Complaint.

10.    The allegations of paragraph numbers 13 through 18 constitute conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies the allegations contained within paragraph numbers 13 through 18 of the Complaint.

11.    Admits only that I-R contacted CNA to request coverage for I-R asbestos-related defense and indemnity costs.    The remaining allegations contained within paragraph 19 constitute conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies the allegations contained within paragraph 19 of the Complaint.

12.    Admits only that CCC made multiple, unsuccessful requests that I-R provide information sufficient for CCC to determine the existence and terms of the alleged policy as well as the existence of any coverage obligation, and that I-R has failed to provide CCC with such information.    CCC otherwise denies the remaining allegations contained within paragraph 20 of the Complaint.

13.    Admits only that CCC possesses no copy of the alleged policy, and otherwise denies the remaining allegations contained within paragraph 21 of the Complaint.

14.    Admits only that I-R demanded that CCC provide coverage for asbestos claims asserted against I-R.    CCC denies knowledge or information sufficient to form a response as to I-R's allegations concerning its "Complex Claims Manager," and

otherwise denies the remaining allegations contained within paragraph 22 of the Complaint.

15.    Admits only that I-R demanded that CCC provide coverage for asbestos claims asserted against I-R, and otherwise denies the remaining allegations contained within paragraph 23 of the Complaint.

16.    The allegations contained within paragraph 24 of the Complaint constitute conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC admits only that it requested information demonstrating exhaustion of the liability insurance policies underlying the alleged policy, and otherwise denies the remaining allegations contained within paragraph 24 of the Complaint.

17.    Admits only that CCC continued to request evidence of exhaustion of the policies underlying the alleged policy, and otherwise denies the remaining allegations contained within paragraph 25 of the Complaint.

18.    Admits only that I-R requested that CCC provide coverage for the asbestos claims asserted against I-R, and otherwise denies the remaining allegations contained within paragraph 26 of the Complaint.

19.    Admits only that CCC met with I-R on or about September 20, 2007 and requested information regarding I-R's liability insurance program and costs paid in connection with the asbestos claims, and otherwise denies the remaining allegations contained within paragraph 27 of the Complaint.

20.    Denies the allegations contained within paragraph 28 of the Complaint.

21.    In response to paragraph 29 of the Complaint, CCCrepeats and re-alleges with the same force and effect its responses to I-R's allegations set forth in paragraphs 1 through 28 of the Complaint as though fully set forth herein.

22.    The allegations contained within paragraphs 30 through 34 of the Complaint constitute conclusions of law such that no response is unnecessary, but insofar as a response is deemed necessary, CCC denies the allegations contained within paragraphs 30 through 34 of the Complaint.

23.    In response to paragraph 35 of the Complaint, CCC repeats and re-alleges with the same force and effect its responses to I-R's allegations set forth in paragraphs 1 through 34 of the Complaint as though fully set forth herein.

24.    The allegations contained within paragraphs 36 through 47 of the Complaint constitutes conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies the allegations contained within paragraphs 36 and 47 of the Complaint.

25.    In response to paragraph 48 of the Complaint, CCC repeats and re-alleges with the same force and effect its responses to I-R's allegations set forth in paragraphs 1-47 of the Complaint as though fully set forth herein.

26.    Paragraph 49 of the Complaint constitutes conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies knowledge or information sufficient to form a response as to allegations of Paragraph 49.

27.    Denies knowledge or information sufficient to form a response as to the allegations contained within paragraph 50 of the Complaint.

28.    Paragraph 51 of the Complaint constitutes conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies the allegations in paragraph 51 of the Complaint.

29.    Paragraph 52 of the Complaint constitutes conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC admits that issuance of relief by this Court will resolve the existing controversy between the parties.

30.    Paragraph 53 of the Complaint constitutes conclusions of law such that no response is necessary, but insofar as a response is deemed necessary, CCC denies the allegations in paragraph 53 of the Complaint.

31.    CCC denies each and every allegation contained in I-R's request for relief, including, without limitation, paragraphs 1 through 4.  CCC further denies that I-R is entitled to any or all relief sought.

### AS AND FOR A FIRST DEFENSE

32.    The Complaint, and each of the causes of action alleged therein, fails to allege facts sufficient to state a cause of action against CCC upon which relief may be granted.

### AS AND FOR A SECOND DEFENSE

33.    To the extent the Complaint states a claim against CCC upon which relief could be granted, such claim is or may be barred by application of the equitable doctrines of waiver, estoppel, laches, and unclean hands, and/or by operation of the applicable statute of limitations.

### AS AND FOR A THIRD DEFENSE

34.    This Court lacks personal jurisdiction over CCC.

## AS AND FOR A FOURTH DEFENSE

35.    Venue is improper.

## AS AND FOR A FIFTH DEFENSE

36.    The Complaint is, or may be, subject to dismissal for failure to join all parties necessary and/or indispensable to this action in order for complete relief to be afforded by this Court.

## AS AND FOR A SIXTH DEFENSE

37.    I-R lacks standing to bring this action.

## AS AND FOR A SEVENTH DEFENSE

38.    I-R cannot meet its burden of proving the existence of the alleged policy at issue herein.

## AS AND FOR AN EIGHTH DEFENSE

39.    I-R cannot meet its burden of proving of the terms of the alleged policy at issue herein.

## AS AND FOR A NINTH DEFENSE

40.    There is no coverage under the alleged policy, to the extent it exists, unless and until all deductibles, self-insured retentions, underlying insurance coverage, and all other primary and lower level excess or umbrella insurance coverage which may be applicable to any particular underlying claim has been exhausted.

## AS AND FOR A TENTH DEFENSE

41.    I-R cannot meet its burden of proving with competent evidence the limits of policies underlying the alleged policy at issue here are properly exhausted.

## AS AND FOR AN ELEVENTH DEFENSE

42.    Under New Jersey law, which applies to this action, insurance coverage must be allocated as set forth in *Carter Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312 (N.J. 1998), to all periods that are triggered by the claim in question.  Under the allocation method set forth in the *Carter Wallace* case, to the extent I-R can meet its burden of proving the existence and terms of the alleged policy at issue herein, the alleged policy has not attached.

## AS AND FOR A TWELFTH DEFENSE

43.    To the extent that I-R meets its burden of proving the existence and the terms and conditions of the alleged policy at issue herein, I-R has failed to cooperate and/or perform all of its obligations under the insurance policy allegedly issued by CCC to I-R.

## AS AND FOR A THIRTEENTH DEFENSE

44.    Any policy which may have been issued by CCC contains various limits of liability, including but not limited to per occurrence, in the aggregate and/or in the event of other insurance.  In the event that CCC is liable to I-R (which liability is expressly denied), CCC's liability is restricted to said policy limits.

## AS AND FOR A FOURTEENTH DEFENSE

45.    To the extent that I-R meets its burden of proving the existence and the terms and conditions of the alleged policy at issue herein, the causes of action asserted in the Complaint are barred in whole or in part by the terms, exclusions, conditions, limitations and other provisions contained in or incorporated by reference in the insurance policy allegedly issued by CCC to I-R.

## AS AND FOR A FIFTEENTH DEFENSE

46.    To the extent that I-R meets its burden of proving the existence and the terms and conditions of the alleged policy at issue herein, the causes of action asserted in the Complaint are barred in whole or in part because the events giving rise to the allegations in the Complaint do not constitute an "accident" or "occurrence" within the meaning of the insurance policy allegedly issued by CCC to I-R.

## AS AND FOR A SIXTEENTH DEFENSE

47.    I-R's claims are barred in whole or in part under the alleged policy to the extent I-R's claims involve losses which were known or reasonably should have been known by the named insured, or were in progress, at the time of negotiation and issuance of CCC's alleged policy.

## AS AND FOR A SEVENTEENTH DEFENSE

48.    The causes of action asserted in the Complaint are barred, in whole or in part, to the extent any of the damage alleged in the Complaint occurred prior to or after the expiration of the insurance policy CCC allegedly issued to I-R.

## AS AND FOR AN EIGHTEENTH DEFENSE

49.    The causes of action in the Complaint are barred in whole or in part because liability insurance provides coverage only for fortuities. Coverage is barred to the extent the acts, conditions, events and damages alleged in the Complaint or that form the basis of the underlying claims against I-R were not fortuitous.

## AS AND FOR A NINETEENTH DEFENSE

50.    CCC is not liable to I-R to the extent that any "other insurance" clauses contained in the alleged insurance contract applies.  Some or all of the claims against CCC may be barred in whole or in part by reason of existence of other insurance.

## AS AND FOR A TWENTIETH DEFENSE

51.    To the extent that any of the claims or suits for which I-R seeks coverage, seeks recovery of fines, penalties, punitive or exemplary damages, such claims or suits are not covered under the terms and provisions of the alleged policies issued by CCC by applicable law, or by public policy.

## AS AND FOR A TWENTY-FIRST DEFENSE

52.    The alleged policy does not provide coverage to the extent that any of the costs alleged in the Complaint have not yet been incurred and/or have not yet been finally determined.

## AS AND FOR A TWENTY-SECOND DEFENSE

53.    CCC reserves its rights to assert any and all defenses which may have been excluded from this answer in the event that further information becomes available to CCC through discovery or further investigation.

**WHEREFORE**, defendant CCC demands judgment as follows:

1.    Determining and declaring that I-R has not met its burden of proving the existence or terms of the alleged CCC policy and that CCC does not owe any defense or indemnification thereunder.

2.    Determining and declaring that, to the extent the alleged CCC

policy exists, I-R's losses have not reached the limits of the alleged

policy.

3.    Declaring that any insurance contract allegedly entered into by

CCC does not cover the claims alleged in the Complaint;

4.    Dismissing the Complaint with prejudice; and

5.    Such other and further relief as to this Court appears just and

proper, together with the costs and disbursements of this action.

Dated: New York, New York
       May 30, 2008

Respectfully submitted,

**FORD MARRIN ESPOSITO WITMEYER
& GLESER, L.L.P.**

By: _Alfred L._ _____
     Edward M. Pinter (EP 5869)
     Alfred L. D'Isernia (AD 9700)

Wall Street Plaza
New York, New York 10005-1875
Tel.:  (212) 269-4900
*Attorneys for Defendant Continental Casualty
Company*

11